And the next case on the calendar is Gachette v. Metro North-High Bridge. Good morning. May it please the court, my name is Louis Gachette. I'm here today to say appellate in this case Gachette v. Metro North-High Bridge. With the court's permission, I would like to reserve one minute for rebuttal. This case is about discrimination and retaliation under the auspices of Dave Blum and Preston Kirk and Metro North Railroad. By decision and order dated January 14, 2013, Honorable Judge Allison G. Nitton had already granted plaintiff or appellate a motion in part and denied in part. The court already found that plaintiff or appellate was subject to disparate treatment under the auspices of Preston Kirk and Metro North and also retaliation. A good case in point, shortly after I have been graduate with a bachelor degree in electronic communication, I had been working for Metro North as an electrician maintaining of equipment. And a good case in point is when I was not paid overtime for work done at the high bridge when in fact all of the white employees like Mickey Mezzo and Jason McCoy, they have their share. Besides, I was not paid for my vacation when in fact all the other workers were paid for their vacation. Number two, I was subject to a great deal of drug tests when in fact all those tests appeared negative. They claimed those tests were random when in fact, your honor, it was fomented by Preston Kirk and Dave Blum who are the supervisor. I was on intermittent family leave of absence. When I was discriminately fired, I had at least 26 days for which I had never been paid. In addition, I have pending vacation days for which I had never been paid and also a few personal days that I never been paid. I have been fired one day, your honor, after nine years, 11 months, and 29 days in the way discriminately to not complete my 10 years of fulling of service and to miss my full retirement at 55 years old. At that time I was 53, almost 54. All of the above, your honor, are discriminatory act that I had been subject to and I want me to not be rebuked and punished for his condoned practices. This case, I had with shop, your honor, no such requirement for drug tests is in place because appellate or plaintiff never operate any commercial motor vehicle nor did he perform any safety sensitive job assignment. However, plaintiff or appellate had been single-handed picked up for drug tests in order for me to not to further his discriminatory. One of your contentions is that you made discovery demands of Metro-North to get the overtime records and they never gave you the overtime records and you complained to the court that you didn't get the overtime records that you demanded, but the court went ahead and granted summary judgment against you without ordering Metro-North to produce those records. Is that correct? That's correct, your honor, because Metro-North failed to follow the discriminatory. Is that correct? Yes, your honor, they failed to follow. When did you first ask, when did you first call to the court's attention that Metro-North did not provide you with the discovery that you had demanded of the overtime records? Shortly after the deadline, they had to follow. I'm asking you, when did you tell the judge that you didn't get the overtime records that you had demanded as a discovery demand? When did you tell the judge that? I told the judge, I went to the post office and notified that Metro-North did not follow and they gave me a form, a letter to fill and to let the judge know that, and I did it. When did you do that? I did it when the time to present or to follow disclosure was done, and I didn't been contacted by Metro-North, so I let the court know that. Was this before or after the date that the court had said for the completion of discovery? This is after, because I was waiting for them to follow the disclosure. Thank you. That's the only way for me, judge, to let the court know. Thank you. The red light is on, so we'll hear from your adversary, and you've reserved some time for rebuttal. Yes, your honor. Can I continue? No. Why don't we hear from your adversary now, because your four minutes have expired, and you wanted to reserve some time for rebuttal, and you may want to respond to what he's saying. Yes, your honor. So, Mr. Minan, I'm troubled by this point about, if I understand correctly, the plaintiff served a discovery demand on Metro-North for the overtime records, and Metro-North did not produce them, and at a date, which I gather may have been after the date for the completion of discovery, when you made the motion for summary judgment, he told the judge, without extending the time for the plaintiff by reason of his not having received those records from you. Why isn't that a problem we should be concerned with? Your honor, it's not a problem in this case, and the district court did not abuse its discretion in denying the request to compel discovery for three reasons, your honor. First of all, the request was untimely. The issue was first raised upon review of the docket. Hold on one second. Didn't Metro-North in a letter ask for more time to come up with the information, and the judge granted it? Your honor, the letter that you're referring to was in response to Metro-North requesting additional time to file its motion for summary judgment. Right, but in the letter, Metro-North says that in order to rebut plaintiff's allegation, defendants began to gather information about overtime assigned to all electricians, a duly implementation of a new payroll system. It's difficult, and you asked for an extension until July 12th, and the court granted it. Because you couldn't locate the overtime records that the plaintiff had requested. Your honor, there is no request, and I have reviewed the file that was received by Metro-North. This letter suggests that you're looking for the information. Did you ever find it? Did you ever produce it? Did you ever submit it? No, your honor. It was not produced or submitted or relied upon, and your honor is correct that that letter was- The information had either shown or not shown that white employees were getting more overtime than Mr. Gachette. Your honor, it was not relied upon by Metro-North in its motion for summary judgment. No, but it could have been relied upon by Mr. Gachette if it indeed showed a disparity in overtime hours. Your honor, that is not the way that the issue arose, given the timing of when these- Would the records have supported a claim of disparity in the assignment of overtime? No, your honor, not as to the three employees that appellant is claiming would in fact have been comparators, because, your honor, to the first comparator, which Mickey Mezzo, by plaintiff's own admission, was not employed until after appellant was terminated from Metro-North. So there would never have been a position where the two employees would have been competing for this alleged overtime that was being denied. The other employee mentioned, Jason McCoy, is not even alleged to have been in his same position. He was alleged to have been promoted to a foreman. So, again, those records would not have had any basis on comparator evidence. A third name, Mark Terry, again, was brought out by the appellant. You made the suggestion to the district court that you were actively looking for these records so that you could respond to the summary judgment motion. It suggests that the information, if found, was not favorable, and therefore you didn't submit it. Your honor, I think you have the posture of that letter incorrect. That was prior counsel's request to extend its time to file its own motion for summary judgment. I understand that, but it was saying we're trying to gather this overtime information so that we can respond, and then once the response is filed, there's nothing about overtime. Right, your honor, because if you ---- Records aren't ever produced, apparently, even though a request was made for time to gather the information. Metro North made the request for time because if you take a look at plaintiff's deposition transcript, which was May 23rd, the timing one week short of the discovery cutoff in this case, he made generalized allegations, could not name any employee at the time of his deposition. Did he ask for these records? Did he make a discovery demand for the overtime records? No, your honor, our file has no discovery demand for overtime records. The only discovery exchange by the parties were the initial disclosures, which would include the documents Metro North was intending to rely upon, referencing Judge Chinn's letter, as well as the plaintiff's own deposition. There were no other requests served, and as you can see from the docket, when the issue was raised, no request was attached, no allegation that they had taken efforts to obtain that information, and given that the discovery cutoff had already closed in May, your honors, I see my time is up. So you're saying as far as the record shows, the first request by the plaintiff for these records is in July at the time of the summary judgment adjudication. Fully briefed and pending before the court. And it's not the Metro North that hands out overtime, am I right about that? It's the union. That is correct, your honor. In this case, the IBEW union representative, who was also of the same protected class as the plaintiff, is the only person in charge of maintaining the seniority list and picking the specific electrician who would be next. There's no allegation that Metro North was involved in that process. Aren't there allegations that Metro North influenced the union selection? Your honor, the only allegation would be that there was influence. There is no factual evidence of any actual discussions between those parties. There's no evidence in the record at the deposition of any influence. Absolutely none, your honor. And in fact, plaintiff's, appellant's own dispute regarding overtime had to do with whether he would be entitled to a third day in a row because another black electrician had also received three days in a row, according to appellant. So even if there was an issue as to overtime, it wouldn't rise to one that would be discriminatory or racially based because plaintiff's own argument was that it was simply the clerk himself favoring another employee for non-racial reasons. I'm puzzled by your brief addressing this issue on page 17 of the red brief. You say he claims he was denied discovery. The allegation is without merit. Plaintiff's appellant did not raise to the district court any alleged issue with the sufficiency of discovery until after the close of discovery. You don't say he never served a discovery demand before the close of discovery. You just say he didn't raise with the court a complaint about the sufficiency of discovery until after the close of discovery. It seems to me that especially with a pro se plaintiff, there's a big difference between those. You're telling us now that there was no discovery demand before the close of discovery, but you didn't say that in your brief. That is correct, Your Honor, because a review in this case of the docket, and I believe it was document 41, which were the plaintiff's appellant's attachments to the second summary judgment motion, plaintiff's appellant included what appeared to have been a request for admissions, not a request for interrogatories, that did not expressly ask for any overtime as to those three employees that were then subsequently identified, but it did have in the file a Rule 36 request, again, unclear if it was ever timely served, that included a litany of requests for criminal files and personnel files of different employees and asked several other inappropriate requests, but there is nothing where plaintiff's appellant requested specific overtime records of these specific employees anywhere in the record. I mean, you're hedging your answer with a lot of specificity. Did he ask for overtime records? Did he serve a discovery demand for overtime records, asking that you produce records of overtime? Your Honor, I'm not aware of that ever being received. The file is not complete that he was requesting overtime records, only a request for admissions that included records of every white employee. So it was a request for admissions that contained enumerated as one of the items, again, unsure if it was ever sent or when it was sent, because, again, this was attached to his material submitted in his second brief in opposition to summary judgment, only a blanket request for white records, white employee records. Are you saying to me that you can say definitively that prior to the close of discovery, he never served a discovery demand seeking overtime records? Yes, Your Honor. Thank you. Nothing further. Thank you, Your Honors. Your Honor, discovery demand was served properly before the time end and ended to the lawyer at the discovery deposit. Did you ask for overtime records? Yes. So I asked it by letter. When did you make that request? In the letter that I served to them two weeks before, two weeks before, between two weeks before the discovery. Is that letter in the record anywhere? Yes. They have the record and I submitted that letter to the court, too. I mean, in the record, was it filed with the court at any time? Your letter requesting overtime records. Yes. Everything was included. Was it filed with the court? Yes. Everything was included. You said it was filed two weeks before. What was the rest of that sentence? Yes. Two weeks before I was made to not depose me because I respect the rule of 26. But when I send them the letter to notify them, to remind them I have to depose them based on the rule of 26, and then I send that letter and I have a copy, I still have it, and I give a copy of that letter to the court. And also I hand it to the lawyer, hand-to-hand, in front of the court reporter. All right. Well, we have your briefs and we've read them. We'll look at them again and look carefully at the record. Thank you both for your arguments today. That's the last case on the calendar to be argued. So I'll ask the court clerk to adjourn court. Court is adjourned.